BROTHER INDUSTRIES, LTD., BROTHER INTERNATIONAL CORP., AND BROTHER INDUSTRIES (USA), INC., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND SMITH CORONA CORP., DEFENDANT-INTERVENOR

Court No. 91–12–00862

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Dated December 30, 1992)

*Tanaka Ritger & Middleton* (*H. William Tanaka* and *Patrick F. O'Leary*) for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, United States Department of Justice, Civil Division, Commercial Litigation Branch (*Marc E. Montalbine*), *Jeffery C. Lowe,* United States Department of Commerce, Office of the Chief Counsel for Import Administration, of Counsel, for defendant.
*Stewart and Stewart* (*Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Julie B. Chasen* and *Robert A. Weaver*) for defendant-intervenor.

## OPINION

RESTANI, *Judge:* Plaintiffs, Brother Industries, Ltd., et al. (collectively "Brother"), challenge the Commerce Department's determination that Smith Corona Corporation ("Smith Corona") is an interested party with standing to file a petition requesting an anticircumvention proceeding. The court finds that Brother's challenge to standing is ill founded.

## BACKGROUND

On March 18, 1991, Smith Corona filed a petition under 19 U.S.C. § 1677j (1988) with the Department of Commerce, International Trade Administration ("ITA" or "Commerce") alleging that Brother was circumventing an antidumping duty order issued in *Portable Electric Typewriters From Japan,* 45 Fed. Reg. 30,618 (Dep't Comm. 1980) (antidumping duty order). This court has upheld past decisions of Commerce finding that this order covered not only portable electric typewriters (PETs), but also portable automatic typewriters (PATs) and certain portable word processors (PWPs). *See Matsushita Electric Industrial Co. v. United States,* 16 CIT 183, 186, 787 F. Supp. 1461, 1465 (1992); *Smith Corona Corp. v. United States,* 12 CIT 854, 867, 698 F. Supp. 240, 250–51 (1988), *aff'd in part, rev'd in part on other grounds,* 915 F.2d 683 (Fed. Cir. 1990).

In its final negative anticircumvention determination, Commerce decided that Smith Corona, as a manufacturer of a like product, had standing to bring a petition alleging circumvention of antidumping duty orders. *Portable Electric Typewriters From Japan,* 56 Fed. Reg. 58,031, 58,032, 58,038–39 (Dep't Comm. 1991) (final determ.); *see also* Administrative Record at Reel 2, Frames 00943A, 001573A (ITA memoranda dated Sept. 3, 1991 and Nov. 8, 1991).

## STANDARD OF REVIEW

Commerce's determination will be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance

with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Commerce's interpretation of the relevant statutes and regulations will be sustained if the interpretation is "'sufficiently reasonable' to be accepted by a reviewing court." *Zenith Radio Corp. v. United States,* 437 U.S. 443, 450 (1978).

## DISCUSSION

As a preliminary matter, it should be noted that Brother prevailed in its contention that it was not circumventing the antidumping duty order at issue. *See Portable Electric Typewriters,* 56 Fed. Reg. at 58,040. Thus, the dispute with regard to standing will be moot unless Smith Corona successfully challenges Commerce's substantive determination upon appeal.

The statute pertaining to petitions alleging circumvention, 19 U.S.C. § 1677j (1988), does not contain a standing provision. Commerce concluded in this case that the "interested party" standing requirement of a related provision of the statute applies to such petitions. *Portable Electric Typewriters,* 56 Fed. Reg. at 58,032. Commerce also has the parallel authority under 19 U.S.C. § 1673a(a)(1) (1988) to self-initiate proceedings when circumvention is suspected. The court has held that the self-initiation provision may be a basis for continuing an original investigation if there is a technical failure of standing to file a petition. *Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1203, 704 F. Supp. 1075, 1084 (1988); *see also Suramerica de Aleaciones Laminadas, C.A. v. United States,* 10 Fed. Cir. (T) ___, ___, 966 F.2d 660, 667 (1992) ("Commerce has broad discretion in deciding when to pursue an investigation"). The court need not reach issues involving self-initiation as it finds no technical failure of standing.

Standing requirements are not stringent. A petitioner such as Smith Corona need only be "a manufacturer, producer, or wholesaler in the United States of a like product" to be considered an interested party. 19 U.S.C. § 1677(9)(C) (1988) (definition of "interested party"). The legislative history indicates that standing requirements are to be construed liberally. *See* S. Rep. No. 249, 96th Cong., 1st Sess. 63 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 449; *Brother Industries (USA) v. United States,* 16 CIT 789, 794, 801 F. Supp. 751, 757 (1992), *appeal docketed,* No. 93–1010 (Fed. Cir. Sept. 14, 1992); *Citrosuco Paulista,* 12 CIT at 1203, 704 F. Supp. at 1083–84.

First, the court finds that Commerce's failure to verify data submitted by Smith Corona in determining whether Smith Corona had standing was not improper. Commerce, in reviewing standing, need not establish precise numerical values, as it must in setting dumping margins. *Compare* 19 U.S.C. § 1673a(b)(1) (1988) *and* 19 U.S.C. §§ 1677a, 1677b (1988). Thus, a different level of "verification" is appropriate. *See id.* at § 1677e(b). In this case, Commerce found a tour of Smith Corona's plant sufficient to establish interestedness, in that Commerce was able to observe relevant production and related activities at the plant. Given the level of activity, it was not unreasonable for Commerce to decline to un-

dertake a painstaking review of Smith Corona's business records. Commerce simply did not see any glaring flaw in Smith Corona's allegations which would reduce its position to one of little or no stake in the proceedings. *See Brother,* 16 CIT at 794, 801 F. Supp at 757. Commerce acted well within its discretion.

Second, Commerce did not misapply the six-factor test for determining who is an interested party.[1] All parties agree that the test, which was originally devised by the International Trade Commission, is appropriate. *See also id.* at 795, 801 F. Supp. at 758 (upholding ITA's use of the six-factor test). There was substantial evidence in the record supporting the conclusion that the value added in the United States, the investment in plants and equipment, and employment were substantial at the time of the petition filing. The amounts more than satisfy the standing requirements discussed by the court in its recent *Brother* opinion. *Id.* at 793–94, 801 F. Supp. at 757. Conflicting evidence submitted by Brother did not sufficiently undercut that provided by Smith Corona so as to warrant a different outcome. Furthermore, it was not error for Commerce to consider research and development as a separate factor or in determining the value added in the United States. Research and development should be considered. This factor simply may not be elevated out of all proportion when mature products, such as those at issue, are involved. *See id.* at 794–95, 801 F. Supp. at 757–58.

Even though some of Smith Corona's data appear to be in error, no facts raised by Brother on the record would provide an acceptable reason for Commerce to reverse its position, thus remand is not warranted for reconsideration of corrected data.

Finally, Commerce is not required to abandon its court-approved scope decisions and segregate the class into three different like products for purposes of this analysis. While decisions as to the class of imported merchandise may differ from determinations as to the domestic like product, the particular scope determinations at issue, which grouped together PETs, PATs, and certain PWPs were very similar to a like product analysis. Commerce did not err in relying on these decisions, in the absence of any serious challenge based on product differences. Thus, so long as Smith Corona manufactures or produces any one of the three like products, as it does, it is an interested party.[2] Accordingly, Commerce's standing determination is sustained.

---

[1] The factors are as follows: (1) the extent and source of a firm's capital investment; (2) the technical expertise involved in the production activity in the United States; (3) the value added to the product in the United States; (4) employment levels; (5) the quantity and types of parts sourced in the United States; and (6) any other costs and activities in the United States directly leading to production of the like product. *Brother,* 16 CIT at 791, 801 F. Supp. at 755.

[2] Brother alleges Smith Corona only manufactures PATs in the United States.